Paul Edward HOLTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4038.

Supreme Court of Alaska.

Nov. 16, 1979.

**1230**

Walter Share and Deborah Smith, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Charles William Cohen, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

Holton appeals the validity of his felony conviction under Alaska's contributing to the delinquency of a minor statutes, AS 11.40.130 and AS 11.40.150, arguing that the statutes are vague, overbroad and violate equal protection. Holton also challenges his probation revocation, arguing that the state did not prove that he violated a condition of probation. We affirm both the original conviction and the probation revocation.

According to police reports, on July 24, 1976, in downtown Fairbanks, Holton asked a juvenile boy, M.F., for directions to Roth Street. M.F. offered to ride with Holton to show him where the street was. Holton took M.F. to a secluded area, stopped the car, made sexual advances toward him, and offered to perform fellatio. M.F. declined and asked Holton to take him back to town, which Holton did.

M.F. reported his experience to the police, who had received a similar report from another juvenile, T.L. T.L. had also refused Holton's advances but had made a date to meet Holton later that day, July 26, 1976. The police arranged that M.F., fitted with a microphone and transmitter, meet Holton instead of T.L. During their meeting, Holton discussed his homosexual background and, a number of times, asked M.F. to engage in fellatio with him. The police terminated the conversation and arrested Holton.

Holton was indicted by a Fairbanks grand jury on a felony charge of contributing to the delinquency of a minor, AS 11.40.130(b). The charge alleged that Holton had tried to persuade M.F. to engage in lewd conduct, specifically fellatio, on July 26, 1976. Holton pled guilty to the charge and was sentenced by Judge Blair to two years imprisonment, with one year suspended.

On January 28, 1978, while on probation, Holton's conduct with D.O. led to a misdemeanor charge for contributing to the delinquency of a minor, AS 11.40.130(a), and to a petition to revoke Holton's probation. At the revocation hearing, D.O. and Officer Feichtinger testified.[1]

D.O. stated that a man he identified as Holton came up to him as he was going into a Rexall Drug Store in downtown Anchorage. Holton asked D.O. where Ross Street was and he said he had to pick up some marijuana from someone on Ross Street. Holton then said he designed jock straps

---

1. Holton called no witnesses and did not crossexamine either of the state's witnesses.

and asked D.O. if he would be interested in modeling jock straps. D.O. said no.

Q. [District Attorney] What other discussions did you have?

A. [D.O.] And then—then goes, well, would you like to go to my house and drink some beer and smoke some dope? And I said, no, I got to go home and eat. And then he goes, well, you want to make a date? And I said, yeah, behind Rexall Drugs.

They met later that evening[2] and went to a McDonalds. D.O. said he would have some coffee. While Holton was paying, D.O. left and flagged down a car with Officer Feichtinger and another officer in it. After hearing D.O.'s story, the officers approached Holton, and talked with him. Officer Feichtinger subsequently swore out a misdemeanor complaint against Holton for contributing to the delinquency of a minor.

The misdemeanor charge was eventually dropped, but based on the complaint, Holton's probation officer petitioned for a revocation of probation, alleging that Holton had violated the condition of his probation that he "[c]omply with all municipal, state and federal laws and ordinances." After a hearing, Judge Moody found that Holton had committed the offense alleged in the complaint and revoked his probation. Holton moved to dismiss the revocation or, in the alternative, to strike the underlying felony conviction because of constitutional infirmities in AS 11.40.130. Judge Blair denied the motion and sentenced Holton to serve the balance of his original two-year sentence.

## I. PROCEDURAL BASIS FOR HOLTON'S ATTACK ON HIS ORIGINAL CONVICTION

The state argues that Holton may not attack his underlying conviction in a probation revocation hearing and instead must bring a separate action for post-conviction relief pursuant to Criminal Rule 35. We reject this argument in light of Holton's substantial compliance with the requirements of Criminal Rule 35, which provide in part:

(d) *Commencement of Proceedings—Filing—Service.* A proceeding is commenced by filing an application with the clerk of the court in which the conviction occurred. Application forms will be furnished by the clerk of court. An application may be filed at any time. The clerk shall docket the application upon its receipt and promptly bring it to the attention of the court and deliver a copy to the district attorney.

Criminal Rule 35(e) specifies the contents of the application.

Although Holton did not file his motion for post-conviction relief on the special forms provided by the court, he did file a separate "Motion to Dismiss Probation Revocation Proceeding; or in the Alternative, to Strike Felony Conviction." When that motion was denied, Holton made a motion for reconsideration which expressly grounded objection to his underlying felony conviction in Criminal Rule 35(b)(1). Although Holton did not file the motion in the Fourth Judicial District where the original conviction occurred, he sent a copy of the motion to Judge Blair of the Fourth Judicial District, the judge in the original case; and by special arrangement, Judge Blair, who normally sits in Fairbanks, ruled on the motion when he was in Anchorage. Thus, unlike *McKinnon v. State*, 526 P.2d 18, 26 (Alaska 1974), Holton's challenge to his original conviction was decided by the trial judge who pronounced the original sentence.[3]

Judge Blair had sufficient information about the original conviction to permit a ruling on the merits of Holton's challenge.

---

2. D.O. said that he arranged the meeting "because I was going to try and get him arrested." D.O. returned around 8:00 p.m. and walked by the Rexall Drug Store. Holton was there, with his back toward D.O. D.O. went past the drug store to a nearby mall. Holton followed, and the two met coming up opposite stairs.

3. In *Knaub v. State*, 443 P.2d 44, 50 n. 19 (Alaska 1968), we stated that a trial judge in a motion for post-conviction relief may rely on his recollection of the initial proceedings.

The state's position would require pointless relitigation of the issue, probably before the very same judge. We suspect that the state's real concern is that any subsequent proceedings in this case come under the special features of Rule 35. *See, e. g., State v. Hannagan,* 559 P.2d 1059 (Alaska 1977) (state may appeal adverse determination of a Rule 35 proceeding). Were further proceedings in this case necessary, we would require them to be under Rule 35.[4]

## II. VALIDITY OF THE ORIGINAL CONVICTION

Currently, Alaska has a two-part statutory scheme for contributing to the delinquency of a minor. AS 11.40.130 makes "contributing" both a misdemeanor and a felony:

*Contributing to delinquency of a child.*

(a) A person who commits an act, or omits the performance of a duty, which causes or tends to cause, encourage or contribute to the delinquency of a child under the age of 18 years, is guilty of a misdemeanor.

(b) A person who by threats, command or persuasion endeavors to induce a child under the age of 18 years to perform an act or follow a course of conduct which would cause or manifestly tend to cause him to become or remain a delinquent is guilty of a felony, and upon conviction is punishable by imprisonment for not less than one year nor more than two years.

AS 11.40.150 defines the term "delinquent":

*Delinquent defined.* For the purpose of § 130 of this chapter a child is a delinquent if he is under the age of 18 years and

(1) violates a law of the United States, or the state, or an ordinance of a city or town;

(2) is incorrigible, either at home or in school;

(3) knowingly associates with thieves, vicious or immoral persons;

(4) without just cause and without the consent of his parents, or custodian, absents himself from home or his place of abode;

(5) is in danger of becoming or remaining a person who leads an idle, dissolute, lewd or immoral life;

(6) knowingly frequents a house of ill repute;

(7) knowingly frequents a place where a gaming device is operated;

(8) Repealed by § 2 ch. 43 SLA 1968;

(9) wanders about the streets in the nighttime without being on lawful business or occupation;

(10) habitually wanders about railroad yard or tracks;

(11) habitually uses vile, obscene, vulgar, profane or indecent language;

(12) is guilty of or takes part in or submits to an immoral act or conduct; or

(13) is addicted to the habitual use of intoxicating liquor or a drug.

Holton was convicted of the felony charge of contributing to the delinquency of a minor because he tried to persuade a minor to have fellatio with him. Holton contends that his conviction cannot stand because Alaska's contributing to the delinquency of a minor statutes, AS 11.40.130 and AS 11.40.150, are overbroad, vague, and denied him equal protection.

### A. *Overbreadth Challenge*

In *Marks v. City of Anchorage,* 500 P.2d 644, 646 (Alaska 1972), we described the general contours of the overbreadth doctrine:

The overbreadth doctrine has evolved to give adequate breathing room to specific first amendment freedoms; a statute violates the doctrine when constitutionally-protected conduct as well as conduct which the state can legitimately regulate

4. *See Rust v. State,* 584 P.2d 38 (Alaska 1978) (litigant incorrectly filed a Criminal Rule 35 motion challenging conditions of his confinement; subsequent proceedings would occur as if he had filed an independent civil action).

are included within the ambit of the statute's prohibition. [footnote omitted][5]

A unique feature of an overbreadth challenge is that a person has standing to make such an attack even though it might be constitutionally permissible to regulate that person's conduct under a more narrowly drawn and specific statute. *Gooding v. Wilson,* 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105–1106, 31 L.Ed.2d 408, 413 (1972). One commentator states:

> [The] result [of a successful overbreadth challenge] may be understood as an exception to the rule that individuals are not ordinarily permitted to litigate the rights of third parties, since an individual whose conduct may not itself be protected by the first amendment is awarded a judicial victory on the claim of a law's potential unconstitutional applications to the conduct of persons not before the court.

L. Tribe, American Constitution Law 711–12 (1978) (footnotes omitted).

> This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.

*Gooding v. Wilson,* 405 U.S. at 521, 92 S.Ct. at 1105, 31 L.Ed.2d at 413. It follows from this rationale that a statute will not be struck down as overbroad when a limiting construction could end the statute's chilling effect on protected expression. *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830, 840–41 (1973).[6]

We begin by noting that Holton was convicted for contributing to the delinquency of a minor because he tried to persuade M.F. "to engage in lewd conduct, to-wit: fellatio." Holton does not argue that fellatio between a child and an adult would not constitute "an immoral act or conduct" within the permissible reach of AS 11.40.-150(12). Holton argues, however, that since the contributing statutes could apply to so much other protected activity, the statutes are overbroad and his conviction cannot stand.

■ Holton makes essentially two overbreadth arguments. First, he argues that all he did was talk to M.F. and that a mere conversation cannot be the basis of a criminal conviction. Second, he argues that the definition of delinquency in AS 11.40.150 could encompass too much activity protected by the first amendment. In particular,

**5.** The first amendment to the United States Constitution provides:

> Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Similar provisions are found in the Alaska Constitution, article I, sections 5 and 6:

> *Section 5. Freedom of Speech.* Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.
>
> *Section 6. Assembly; Petition.* The right of the people peaceably to assemble, and to petition the government shall never be abridged.

For insight into the overbreadth doctrine in Alaska, *see, Summers v. Anchorage,* 589 P.2d 863, 869 (Alaska 1979) (antisolicitation for prostitution statute not overbroad); *Anderson v. State,* 562 P.2d 351 (Alaska 1977) (statute criminalizing lewd and lascivious acts on the body of a child not overbroad as construed by the court); *Stock v. State,* 526 P.2d 3, 7 (Alaska 1974) (overbreadth doctrine not applicable to antipollution statute); *Marks v. City of Anchorage,* 500 P.2d 644, 646–50 (Alaska 1972) (breach of the peace statute held overbroad). *See generally* L. Tribe, American Constitutional Law 710–24 (1978); Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970).

**6.** In *Broadrick,* the court stated:

> The consequence of our departure from traditional rules of standing in the First Amendment area is that any enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression. Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.

Holton focuses on the following subsections: subsection (5), which defines a delinquent as a minor "in danger of becoming or remaining a person who leads an idle, dissolute, lewd or immoral life;" subsection (11), which defines a delinquent as one who "habitually uses vile, obscene, vulgar, profane or indecent language;" and subsection (12), which defines a delinquent as one who "is guilty of or takes part in or submits to an immoral act or conduct." Holton offers the following examples of constitutionally protected expression that could be penalized by those subsections: a parent or teacher conducting a sex education course; a person telling dirty jokes in front of a minor; and a parent who allows his children to listen to a Lenny Bruce record.[7] Other examples might be telling minors about abortion, birth control or homosexuality. Holton's first argument goes to AS 11.40.130 which criminalizes acts "which cause or tend to cause, encourage or contribute to delinquency." The second goes to the substantive definitions of delinquency in AS 11.40.150.

█ Our recent decision in *Summers v. Anchorage*, 589 P.2d 863 (Alaska 1979), answers Holton's first objection, that a statute is overbroad if a conversation between a defendant and someone else may be the basis for a criminal conviction. In *Summers*, we analyzed a statute that made it a crime to solicit another for prostitution. We held that the statute was not overbroad because it only penalized speech directed to inciting or producing imminent lawless action, namely, prostitution. In this context, we quoted *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430, 434 (1969) (per curiam):

[T]he constitutional guarantees to free speech and free press do not permit a State to forbid or proscribe advocacy . . . *except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.*

589 P.2d at 867 (emphasis added). Assuming that AS 11.40.150(12) ("immoral conduct") includes fellatio, a proposition Holton does not dispute, Holton's attempts to persuade M.F. to have fellatio are not protected speech. Like the defendant's conversations in *Summers*, arranging sexual intercourse for money, Holton's conversations with M.F. would fall within the proscription of *Brandenburg*.

We believe that *Summers* and *Brandenburg* answer Holton's overbreadth objections to AS 11.40.130, because only speech which advocates imminent lawless action and which would be likely to produce such action would be proscribed. Other speech would be protected. In *State v. Crary*, 155 N.E.2d 262, 265 (C.P.Juv.Div., Ohio 1959), the court adopted a similar saving construction of a contributing statute:

The delinquency which the law is trying to prevent must be fairly imminent, a reasonably certain result of the act complained of, reasonably sure to befall a certain child in a reasonable time.

█ We now turn to Holton's overbreadth challenge to the substantive definition of delinquency found in AS 11.40.150. In light of the imminent repeal of AS 11.40.150 and replacement with a different, more specific, definition of delinquency, we will not upset Holton's conviction based on this claim.[8] Usually, a statute's future re-

---

7. Holton also argues that many activities protected by the federal and state right to privacy would fall within the statutory definition of delinquency. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (federal right to privacy emanates from a number of protected rights); Alaska Const., art. I, § 22 (Alaska's express right to privacy). An overbreadth challenge is available to prevent a chilling effect on first amendment rights, *see Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22

(1965), and the closely allied right of free association, *Broadrick v. Oklahoma*, 413 U.S. at 612–13, 93 S.Ct. at 2915–2916, 37 L.Ed.2d at 840; *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). We have held that the overbreadth doctrine is not available to one who asserts a chilling effect on conduct protected by the right to privacy. *Anderson v. State*, 562 P.2d 351, 354–55 (Alaska 1977).

8. Alaska's revised Criminal Code, effective January 1, 1980, repeals AS 11.40, drastically changing and narrowing the contributing statute:

peal receives no weight before this court because we still have to decide the fate of the litigant before us. But a litigant making an overbreadth challenge seeks a victory based on a *prediction* about the statute's future chilling effect on other peoples' exercise of first amendment rights. *Broadrick v. Oklahoma*, 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. "The reason for invalidating a substantially overbroad law is to end its deterrence of constitutionally preferred activity." Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 853 (1970). If the statute's repeal is imminent, any prediction by us is pointless because the chilling effect of the statute will obviously cease with the statute's repeal.[9]

> Sec. 11.51.130. Contributing to the delinquency of a minor. (a) A person commits the crime of contributing to the delinquency of a minor if, being 19 years of age or older, he
> (1) aids, causes, or permits a child under 18 years of age to do any act prohibited by state law;
> (2) induces, causes, or permits a child under 18 years of age to participate in unlawful gambling;
> (3) permits a child under 18 years of age to enter or remain in a building where the unlawful sale of a drug occurs; or
> (4) engages in sexual contact with a child under 16 years of age but 13 years of age or older.
> (b) Contributing to the delinquency of a minor is a class A misdemeanor.

9. An overbreadth invalidation may be viewed as an invitation to the legislature to pass a statute "drawn with the requisite narrow specificity." *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22, 28 (1965). Since the legislature has already repealed AS 11.40.150 and passed a narrower, more specific statute, an overbreadth invalidation would be pointless. We are not intimating the absence of any constitutional defects, including overbreadth, in the new contributing statute, AS 11.51.130. We do note, however, that the new statute does not define delinquency in terms such as "idle, dissolute, lewd or immoral life" or taking part in "immoral act or conduct," and is not susceptible to the applications Holton finds objectionable in the current statute.

10. Four prior decisions dealing with Alaska's contributing statute have commented on this question in a cursory manner or in dictum. In

**B. Vagueness Challenge**

■ Holton alleges his conviction is invalid because AS 11.40.130 and AS 11.40.150 forbid or require

> the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . . .

*Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).[10]

This court in *Summers v. Anchorage* recently stated three factors to consider when determining whether a statute is unconstitutionally vague:

> First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise of first amendment rights. The

*United States v. Meyers*, 143 F.Supp. 1, 4, 16 Alaska 368 (D.Alaska 1956), the court stated that the definition of delinquency "is determined largely from the language of the statute and such definitions as it may contain." The court also stated that the defendant's act, "placing his hand upon a female child in a lustful and lascivious manner," fell within the definition of immoral conduct.

The defendant in *Etherton v. United States*, 249 F.2d 410, 17 Alaska 274 (9th Cir. 1957) (per curiam), *cert. denied*, 355 U.S. 919, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958), did not challenge as vague the definition of delinquency, but the court observed in dictum that there was no vagueness problem because Oregon's similarly worded statute had been upheld. *Id.*, 249 F.2d at 412 n. 1. *Anderson v. State*, 384 P.2d 669, 670 (Alaska 1963), although reversed on other grounds by *State v. Guest*, 583 P.2d 836 (Alaska 1978), cited *Meyers* and *Etherton* and concluded:

> We agree with these authorities. A reading of the entire statute in context should leave no one in doubt as to the meaning of "immoral."

This conclusion is also in the nature of dictum because the court went on to say that any vagueness in the term "immoral" did not prejudice the defendant because the defendant was specifically charged with persuading a minor to have sex with him. *Id.* at 670–71.

Most recently, *Hanby v. State* simply noted the previous decisions as "[i]ndications that AS 11.40.150 is not fatally vague on its face," 479 P.2d 486, 499 (Alaska 1970), but expressly did not decide a general challenge to the vagueness of the statute, *id.* at 499, 500.

second consideration is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited. The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary enforcement by allowing prosecuting authority undue discretion to determine the scope of its prohibitions.

589 P.2d at 866–67 (footnotes omitted). We have already analyzed the overbreadth aspect of vagueness and many of our conclusions apply to the second and third aspects of vagueness.[11]

AS 11.40.130, with its prohibition against conduct which "causes or tends to cause, encourage or contribute to the delinquency" of a minor, gives sufficient notice and limits the discretion of enforcement authorities, when the statute is interpreted to prohibit only advocacy that "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenberg v. Ohio*, 395 U.S. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434.

As for the definitions of delinquency in AS 11.40.150, Holton argues that this court and the United States Supreme Court have struck down as vague many statutory terms equivalent to those in the contributing statutes.[12] Just as "conduct which disturbs or annoys one person might not annoy another," *Poole v. State*, 524 P.2d 286, 289

(Alaska 1974), what is "immoral conduct" by a minor in the eyes of one reasonable person would not be so perceived by another. Thus Holton argues that the bare prohibition against contributing to "immoral conduct" by a minor gives insufficient notice of what is prohibited and permits prosecutors and juries to punish simply what they believe to be immoral conduct. *See State v. Hodges*, 254 Or. 21, 457 P.2d 491 (1969); *State v. Flinn*, 208 S.E.2d 538 (W.Va.1974).

Assuming arguendo that AS 11.40.150 is vague, we have previously stated that a conviction will not be overturned if:

(a) there can be no question as to its applicability to the particular offense involved, and (b) a construction may be placed upon the statute so that in the future the type of offenses coming within its purview may reasonably be understood.

*Stock v. State*, 526 P.2d 3, 8 (Alaska 1974) (footnotes omitted). The first requirement is clearly met in this case. Whatever may be the fringes of "immoral conduct" of a minor within the meaning of AS 11.40.-150(12), fellatio with an adult comes within the "hard core" of that term:

Courts have often recognized that the possibility of difficult or borderline cases will not invalidate a statute where there is a hard core of cases to which the ordi-

---

**11.** The relationship between vagueness and overbreadth is sometimes difficult to distinguish. One commentator notes:

[A] broader proposition may be advanced: that when the Supreme Court has spoken of the facial vagueness of statutes touching first amendment rights, it has seldom if ever been referring to a constitutional vice different from the latent vagueness of an overbroad law. The vagueness doctrine, that is, has been almost wholly merged with the overbreadth doctrine when statutes covering first amendment activities are at issue.

Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. at 873.

**12.** *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) ("opprobrius" words and "abusive" language); *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) (statute permitted jury to

assess court costs to an acquitted misdemeanor defendant if they thought the defendant had engaged in "misconduct"); *Gottschalk v. State*, 575 P.2d 289 (Alaska 1978) (definition of defamatory or scandalous matter as that "which would tend to disgrace or degrade another, to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned"); *Poole v. State*, 524 P.2d 286 (Alaska 1974) (language, noise or conduct that is a "disturbance or annoyance" of another); *Marks v. City of Anchorage*, 500 P.2d 644 (Alaska 1972) ("threatening and violent or tumultuous behavior," "unreasonable noise," "abusive language" and "offensively coarse utterances, gestures or displays" when motivated by an intent to cause "public inconvenience, annoyance or alarm" a crime); *Harris v. State*, 457 P.2d 638 (Alaska 1969) ("crime against nature").

nary person would doubtless know the statute unquestionably applies.

*Id.* at 9 (footnote omitted).

■ The final factor to be considered in determining whether a statute is vague "is its potential for arbitrary or selective enforcement." *Summers v. Anchorage,* 589 P.2d 863, 868 (Alaska 1979). However, as we noted in *Summers,* we will not invalidate a statute on these grounds unless there is some history of arbitrary or selective enforcement. *Id.* at 868. Holton has not made such a showing with regard to either AS 11.40.130 or AS 11.40.150.

### C. *Equal Protection Challenge*

AS 11.40.130 makes contributing to the delinquency of a child both a misdemeanor and a felony. Upon his plea of guilty, Holton was convicted of violating AS 11.40.-130(b), the felony provision. Holton argues that his conviction denied him equal protection because the felony provision punishes the same conduct as the misdemeanor provision, thereby allowing persons who have committed the same offense to be penalized differently based on the whim of the prosecutor. *See People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316, 318 (1975).

■ We recently dealt with the issue of statutes prescribing different penalties for the same conduct in *Bell v. State,* 598 P.2d 908, 909–14 (Alaska 1979).[13] The mere fact that a particular defendant could have been charged with either a felony or misdemeanor does not violate equal protection, so long as the elements necessary to prove the felony and the misdemeanor are different. *Bell v. State,* 598 P.2d at 912–14; *State v. Modica,* 567 P.2d 420, 421–22 (Hawaii 1977). We find no denial of equal protection in this case because the elements of proof for a misdemeanor conviction under AS 11.40.-130(a) are not the same as the elements of proof for a felony conviction under AS 11.-40.130(b).

The felony section requires an act of initiation by the adult: the defendant must use "threats, command or persuasion" to induce a child to perform an act of delinquency. The misdemeanor section contains no such requirement. The state must simply prove that the defendant committed an act (or omitted the performance of a duty) which contributed to the delinquency of a minor. Clearly, the legislature might punish more severely an adult who initiates contact with the minor to induce the child to perform an act causing or tending to cause delinquency.[14] Thus, "[t]he prosecutor's discretion may be exercised only in accordance with the legislative mandate requiring the state to prove that the offender is deserving of more severe punishment . . . ." *Bell v. State,* 598 P.2d at 914.[15]

**13.** *Bell* upheld a statute that created a felony and misdemeanor joyriding offense, AS 28.35.-010. The misdemeanor offense was taking a vehicle without the consent of the owner with intent temporarily to deprive the owner of possession. The felony offense had an additional element: the state had to prove that the defendant had twice previously been convicted of misdemeanor joyriding.

**14.** The prior version of AS 11.40.130, § 65–9–11, ACLA 1949, made all contributing offenses felonies. In 1967, the legislature repealed AS 11.40.130 and reenacted it in its current form. Ch. 21, § 1, SLA 1967. The original bill to amend the statute classified both of the criminal acts as misdemeanors. The House Judiciary Committee substituted its own bill, which divided the statute into felony and misdemeanor provisions. The legislative history indicates that the Committee believed that it was imposing a stiffer punishment based on the gravity of the offense:

The original bill changes the classification of contributing to the delinquency of a minor from a felony to a misdemeanor. The Committee Substitute allows a misdemeanor or felony classification depending upon the gravity of the act.

1967 House Journal 301.

**15.** The state also argues that a different mental element, "specific intent," is required under AS 11.40.130(b) because the defendant must "[endeavor] to induce" delinquency. The state interprets that phrase as "a requirement of specific intent to bring about the illegal end." Assuming this is the correct interpretation of AS 11.40.130(b), the record clearly indicates that Holton intended to bring about an illegal end, namely, fellatio with a minor. We do not decide whether the state's interpretation is correct.

## III. THE DECISION TO REVOKE PROBATION

This court in *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973), noted the two-step nature of the decision to revoke probation:

> A probation revocation hearing is not a criminal proceeding. The focus of the hearing should be to determine whether the probationer violated one or more of the conditions of his probation and the appropriate disposition in the event it is determined that petitioner violated his probation. In *Morrissey v. Brewer*, 408 U.S. 471, 479–480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d [484,] 493 (1973) Chief Justice Burger wrote
>
> > The first step in a [parole] revocation decision involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more of the conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation. [Footnotes omitted.][16]

The state has the burden of proving both elements by a preponderance of evidence.[17]

Pursuant to the first step, Holton alleges that the state must prove a violation of a specific condition of probation and points to AS 12.55.085(b):

> At any time during the probationary term of the person released on probation, a probation officer may . . . revoke and terminate the probation, if the interests of justice require, and if the court, in its judgment, has reason to believe *that the person placed upon probation is violating the conditions of his probation, or engaging in criminal practices,* or has become abandoned to improper associates, or a vicious life. [Emphasis added.]

The state argues that probation may be revoked for good cause and that does not necessarily mean violating a condition of probation. The state relies on AS 12.55.110:

> When sentence has been suspended, it shall not be revoked except for good cause shown.

Holton's position is clearly superior for two reasons.[18] It is more compatible with the nature of parole. As the Supreme Court stated in *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484, 492 (1972):

> The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.

Even though the probationer's liberty is conditional, he still should know what to do to retain that liberty. A probationer who

**16.** Although the statement in *Morrissey* refers to parole, the Supreme Court has stated:

> Despite the undoubted minor difference between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656, 661 n. 3 (1973) (citations omitted).

**17.** *Swope v. Musser*, 223 Kan. 133, 573 P.2d 587, 589 (1977); *State v. Martinez*, 84 N.M. 295, 502 P.2d 320, 322 (N.M.1972); *Allison v. State*, 562 P.2d 883, 886 (Okl.Cr.1977). *See Gagnon v. Scarpelli*, 411 U.S. at 789 n. 12, 93 S.Ct. at 1763, n. 12, 36 L.Ed.2d at 666 n. 12 (1973) (by implication). AS 12.55.085 refers to revocation of probation if the court has "reason to believe" that the person placed on probation has violated a condition of probation.

**18.** *Wozniak v. State*, 584 P.2d 1147, 1148 (Alaska 1978) (per curiam), does not require rejection of Holton's position. In *Wozniak*, probation was revoked because the probationer committed forgery, even though the sentencing judge had not imposed any conditions for probation at the time of sentencing (the sentencing judge entered an amended judgment imposing conditions). *Wozniak* is limited to commission of subsequent crimes. AS 12.55.085(b) imposes as a uniform statutory condition of probation that the probationer not engage in "criminal practices." We note that subsequent offenses are the most common reason for revoking parole or probation. *Gagnon v. Scarpelli*, 411 U.S. at 787, 93 S.Ct. at 1762, 36 L.Ed.2d at 664.

has not violated a condition of probation is entitled to keep his liberty.[19]

Holton's position is also more compatible with Alaska statutes and case interpretation regarding probation and parole. We have consistently referred to AS 12.55.085 as the authority for suspending sentences.[20] Virtually every decision about probation has involved some question about the permissibility of a condition of probation.[21] As Holton argues, the good cause requirement in AS 12.55.110 refers to the finding at the second step of the revocation process:

> The requirement that probation revocation follow after a showing of "good cause" requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's interest in the probationer's rehabilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.

*Trumbly v. State*, 515 P.2d at 709.

Thus, the state must prove that Holton violated a condition of probation. We now consider whether the state met that burden.

■ A condition of Holton's probation was that he obey municipal, state and federal laws. Holton's interaction with D.O. led to a misdemeanor complaint against Holton for contributing to the delinquency of a minor, AS 11.40.130(a). The complaint, which was the basis for the petition to revoke Holton's probation, charged that:

Paul E. Holton did unlawfully attempt to furnish alcohol, marijuana and to view the undressed body of a 14 year old male juvenile which would tend to cause, encourage, and contribute to the delinquency of said person . . . .

The trial court concluded that the evidence showed that Holton "did tend to cause and contribute and encourage the delinquency of the complaining witness." The trial court's decision will be upheld if the record, read most favorably to the state,[22] shows that Holton attempted to do something which constitutes delinquency within AS 11.40.150.

■ AS 11.40.150(12) defines a delinquent as a minor who "is guilty of or takes part in or submits to an immoral act or conduct." We find that a minor who undresses for an adult with the purpose of satisfying the sexual desires of the child or adult has participated in immoral conduct. Earlier in this opinion, we found that fellatio between an adult and a child falls within the hardcore definition of immoral conduct. For an adult to persuade a child to undress in private for the purpose of satisfying sexual desires is very close to, and obviously could lead to, sexual intercourse between the adult and child.

■ We next must decide whether the record supports the trial court's conclusion that Holton attempted to view D.O.'s undressed body with sexual intent. Holton did not earn a living by designing jock

**19.** *Nelson v. United States*, 225 F.2d 902, 904 (10th Cir. 1955); *Manning v. United States*, 161 F.2d 827 (5th Cir. 1947), *cert. denied*, 332 U.S. 792, 68 S.Ct. 102, 92 L.Ed. 374 (1947); *Swope v. Musser*, 223 Kan. 133, 573 P.2d 587, 589 (1977) ("A probationer may not have his probation revoked unless it is made to appear that he has failed to comply with the terms and conditions of his probation.").

**20.** *Spraque v. State*, 590 P.2d 410, 415 (Alaska 1979); *Alexander v. State*, 578 P.2d 591, 592 (Alaska 1978) (per curiam); *Tiedeman v. State*, 576 P.2d 114, 116 (Alaska 1978).

**21.** *See, e. g., Sprague v. State*, 590 P.2d 410 (Alaska 1979) (punitive fine not authorized as condition of probation); *Alexander v. State*, 578 P.2d 591 (Alaska 1978) (per curiam) (con-

viction undergoing appeal can be used to show that conditions of probation have been violated); *Tiedeman v. State*, 576 P.2d 114 (Alaska 1978) (upholding condition of probation that defendant not appear drunk in public for five years); *Martin v. State*, 517 P.2d 1399 (Alaska 1974) (upholding revocation of probation because defendant had not complied with condition that he abstain from alcohol); *Snyder v. State*, 496 P.2d 62 (Alaska 1972) (conviction not required to show defendant violated condition of probation that he obey laws).

**22.** *See* note 3 *supra*. We note that Holton neither cross-examined the state's witnesses at the revocation hearing, nor presented any of his own.

straps and the record clearly supports the trial court's finding that Holton possessed the requisite intent, that is, that he wanted to view D.O.'s body with an intent to gratify his (Holton's) sexual desires. Holton's initiation of the conversation with D.O. and request that D.O. model jock straps was preparation for an overt act towards D.O. and contributed to D.O.'s delinquency. Thus, the state proved that Holton violated a condition of probation.

The final question for our resolution is whether Holton should have been "recommitted to prison or [whether other steps should have been] taken to protect society and improve chances of rehabilitation." *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484, 493 (1973). Judge Blair did not abuse his discretion in deciding to revoke Holton's probation. Holton's commission of a crime while on probation, particularly an offense very similar to his original one, supports the conclusion that "continuation of probationary status would [have been] at odds with the need to protect society and society's interest in the probationer's rehabilitation." *Trumbly v. State*, 515 P.2d at 709.[23]

AFFIRMED.

---

**23.** Holton's argument that the trial court abused its discretion by revoking probation instead of requiring counseling, because counseling would have furthered Holton's rehabilitation, lacks merit. First, in deciding whether to revoke probation, the court can consider other goals besides rehabilitation, such as the need to protect society and deter others from similar acts. Second, Holton cites the presentence report prepared for Holton's *initial* conviction. That report states that no program in the Division of Corrections could help Holton. Third, when Holton's counsel suggested a non-custodial counseling program, Judge Blair expressed interest in the idea. Holton's attorney promised to research available programs and report back to the court. Apparently, he never did and thus has waived his right to raise the argument now.