James C. MOORE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10661.

Court of Appeals of Alaska.

April 5, 2013.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

BOLGER, Judge.

James C. Moore was convicted of two counts of online enticement of a minor and one count of distribution of indecent material to a minor. The charges arose out of Moore's online chat room interactions with Anchorage police officers posing as fourteen-year-old girls. Moore told two chat room characters to masturbate for him (the online enticement charges), and he allowed another of the characters to watch a web camera video of him masturbating (the distribution charge).

While Moore's appeal was pending, the federal district court struck down the distribution of indecent material statute, and Moore's conviction on the distribution charge was vacated.

Moore now appeals his online enticement convictions. He argues that (1) the online enticement statute is unconstitutional on its face as a restriction on free speech, (2) there was insufficient evidence to convict him of online enticement, and (3) the evidence to prove the distribution charge was not admissible to prove the online enticement charges.

We conclude that the statute can be reasonably interpreted in such a way that it is not facially unconstitutional. We conclude there was sufficient evidence to show that Moore believed he was chatting with minors under sixteen years of age. And we conclude that the admission of evidence to prove the charge of distribution of indecent material was not plain error.

### Background

In early 2006, the Anchorage Police Department established a unit to investigate Internet crimes against children. Police officers in the unit posed as three fictitious online characters. We will refer to the characters as "Allie," "Emma," and "Groupie" and collectively as the "chat room characters."

On February 24, 2006, Moore interacted with Allie in an online chat room. During that exchange, Moore asked for a picture of Allie and asked her age. Allie replied that she was fourteen years old. Moore responded that, from her picture, she looked like she was in her twenties, and stated that he was twenty-nine years old. (He was actually thirty-nine years old at the time.) Moore asked Allie if she would have a problem sleeping with someone his age. Later in the conversation, Moore asked Allie to masturbate for him.

Moore's next interaction with the chat room characters was with Groupie on April 5, 2006. Groupie told Moore that she was a fourteen-year-old female in Eagle River. Moore wrote that he was a twenty-nine-year-old male in Anchorage.

Moore contacted Groupie again on April 20, 2006. He asked about her age again, asking specifically, "[A]re you under eighteen?" Groupie replied that she was thirteen, but would turn fourteen in June. Moore asked if she was a virgin, and suggested that he could be her first sexual partner.

Moore's next contact with the chat room characters was on April 26, 2006, when he initiated a conversation with Emma. He asked her age, and Emma answered that she was fourteen. After the conversation turned more sexual, Moore asked Emma to masturbate for him.

Moore's last contact with these chat room characters was on August 3, 2006, when he masturbated in front of a web camera. Groupie asked Moore's permission to watch online, and Moore approved. Later, Groupie asked if Moore knew who she was when he allowed her to watch, and Moore responded that he did. Moore invited Groupie to view his web camera again, and focused the camera on his penis.

Moore was indicted on one count of distribution of indecent material[1] for the August 3 interaction with Groupie. He was indicted on two counts of online enticement of a minor,[2] one for the February 24 interaction with Allie, and one for the April 26 interaction with Emma.

At trial, Moore testified that when Allie gave him her picture, he thought she was at least eighteen years old, but that she was trying to play the online role of a fourteen-year-old. He testified that he always assumed that the people in the online chat rooms were role-playing. He testified that he thought Groupie looked like she was sixteen or seventeen years old.

A jury convicted Moore on all three counts. However, on June 30, 2011, the federal district court held that the Alaska distribution of indecent material statute was unconstitutional,[3] and Moore's conviction under that statute was vacated. Moore now appeals his convictions for online enticement of a minor.

### Discussion

*The online enticement statute can be read narrowly to avoid the danger of unconstitutionality.*

■ Alaska Statute 11.41.452 forbids the online enticement of a minor as follows:

(a) A person commits the crime of online enticement of a minor if the person, being 18 years of age or older, knowingly uses a computer to communicate with another person to entice, solicit, or encourage the person to engage in an act described in AS 11.41.455(a)(1)-(7) and

(1) the other person is a child under 16 years of age; or

(2) the person believes that the other person is a child under 16 years of age.

This statute incorporates by reference a list of sexual activities prohibited by AS 11.41.455, the statute that forbids the unlawful exploitation of a minor:

(a) A person commits the crime of unlawful exploitation of a minor if, in the state

and with the intent of producing a live performance, film, audio, video, electronic, or electromagnetic recording, photograph, negative, slide, book, newspaper, magazine, or other material that visually or aurally depicts the conduct listed in (1)-(7) of this subsection, the person knowingly induces or employs a child under 18 years of age to engage in, or photographs, films, records, or televises a child under 18 years of age engaged in, the following actual or simulated conduct:

(1) sexual penetration;

(2) the lewd touching of another person's genitals, anus, or breast;

(3) the lewd touching by another person of the child's genitals, anus, or breast;

(4) masturbation;

(5) bestiality;

(6) the lewd exhibition of the child's genitals; or

(7) sexual masochism or sadism.

Alaska Statute 11.41.436(a)(4), the statute that forbids sexual abuse of a minor in the second degree, applies to an offender who "aids, induces, causes, or encourages a person who is under 16 years of age to engage in [the] conduct described in AS 11.41.455(a)(2)(6)."

To summarize, the sexual abuse statute generally forbids a person from causing or encouraging a child to engage in the listed sexual activities; the unlawful exploitation statute forbids a person from inducing a child to engage in the listed sexual activities in order to produce a film or other material; and the online enticement statute forbids a person from using a computer to "entice, solicit, or encourage" a child to engage in the listed sexual activities.

The online enticement statute is written to allow police sting operations like the one in this case. The statute applies if the defendant entices either a child under sixteen years of age or a person that the offender

1. AS 11.61.128 (2006).

2. AS 11.41.452.

3. *Am. Booksellers Found. for Free Expression v. Sullivan,* 799 F.Supp.2d 1078, 1083 (D.Alaska 2011).

believes is under sixteen.[4] The statute goes on to clarify that "it is not a defense that the person enticed, solicited, or encouraged was not actually a child under 16 years of age."[5]

Moore argues that this statute is so overbroad that it chills the exercise of valid First Amendment rights and is unconstitutionally void for vagueness. We review these constitutional questions *de novo*.[6]

The major part of the dispute in this case concerns the construction of the phrase "entice, solicit, or encourage" as used in this statute. Moore contends that the use of this phrase renders the statute unconstitutionally overbroad and void for vagueness. In response, the State concedes that this language should be narrowly construed to require the State to prove that the offender deliberately intended to persuade a child to engage in the listed sexual activities. We believe that the State's concession involves a narrow construction of the term "encourage" so that the use of that term is consistent with the meaning of the terms "entice" and "solicit."

■ We are required to employ a reasonable narrowing construction of this statute if necessary to avoid the danger of unconstitutionality.[7] As we discuss below, there is a danger that without a narrowing construction, this statute could pose an unconstitutional infringement on some protected speech. The State's proposal appears to be reasonably consistent with the language of the statute. The next step is to review the legislative history to determine if this construction is likewise consistent with legislative intent.

When the online enticement statute was first introduced, the bill's sponsor stated that the purpose of the statute was to protect children from sexual predators and to prevent online victimization.[8] He asserted that one out of five children had received solicitations over the Internet in the preceding year.[9] He noted that current statutes could be stretched to allow prosecution of online solicitation, but he argued that a new statute was a better approach to remedy the problem.[10]

The sponsor noted that the bill prohibited the online enticement, solicitation, or encouragement of the sexual activities listed in AS 11.41.455, and he suggested that enticing a person who the defendant believes is under sixteen is essentially an attempt to commit this crime.[11]

A representative from the Department of Law also made comments to the Judiciary Committee. She noted that most of the conduct prohibited by the bill was already prohibited by other sections of the criminal code, specifically the sexual abuse of a minor statute, which criminalized enticing or encouraging sexual activities with a minor.[12] She noted that solicitation of sexual abuse of a minor was basically the same behavior covered in this bill.[13] She noted that the sponsor's intent was to address the "grooming" that occurs online.[14]

The Senate Judiciary Committee's discussion suggests that it believed that minors are harmed by the mere exposure to adults soliciting them to engage in sexual activities. The discussion also suggests that it intended the online enticement bill to prohibit solicita-

4. AS 11.41.452(a).

5. AS 11.41.452(b).

6. *See Doe v. State, Dep't of Pub. Safety*, 92 P.3d 398, 402 (Alaska 2004).

7. *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007); *Holton v. State*, 602 P.2d 1228, 1233 (Alaska 1979) (stating that "a statute will not be struck down as overbroad when a limiting construction could end the statute's chilling effect on protected expression").

8. Minutes of Senate Judiciary Committee, Senate Bill 118, testimony of Sen. French, 8:41 a.m. (Mar. 10, 2005).

9. *Id.*

10. *Id.* at 8:42 a.m.

11. *Id.*

12. Minutes of Senate Judiciary Committee, Senate Bill 118, testimony of Anne Carpeneti, 9:04–9:05 a.m. (Mar. 10, 2005).

13. *Id.* at 9:05 a.m.

14. *Id.* at 9:06–9:07 a.m.

tion of sexual activities that were already illegal under existing law. Based on this discussion, it seems likely that the legislature intended this bill to forbid the online solicitation of sexual activities—solicitation that was already illegal if conducted in person.

Based on this history and the language of the statute, we accept the State's concession. The requirement that the offender "solicit, entice, or encourage" a child means that the State must prove that the offender deliberately intended to cause or persuade the child to engage in the sexual activities listed in AS 11.41.455.

*With this construction, the online enticement statute is not unconstitutionally overbroad.*

█ Moore argues that the online enticement statute violates the right to free speech protected by the First Amendment to the United States Constitution and Article 1, section 5 of the Alaska Constitution. To address this argument, we assume that this statute is aimed at speech that is defined by its content—it criminalizes speech that is intended to persuade a child to engage in the listed sexual activities.[15] Content-based restrictions of protected speech must be narrowly tailored to serve a compelling government interest.[16] The State undoubtedly has a compelling interest in protecting children from sexual exploitation: the United States Supreme Court has recognized the compelling interests in "safeguarding the physical

and psychological well-being of a minor"[17] and "protecting children from harmful materials."[18]

Ordinarily, a litigant must show a personal interest in order to have standing to raise a constitutional question; a litigant generally cannot assert the constitutional rights of others.[19] In the First Amendment context, however, a litigant may contend that a statute is unconstitutionally overbroad, even when their own conduct is not constitutionally protected.[20] This accommodation is necessary to avoid chilling the rights of those who may refrain from protected speech in order to avoid prosecution.[21]

In an overbreadth challenge, a statute will not be judged unconstitutional unless "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[22] The potential overbreadth also must be realistic, not merely hypothetical or speculative.[23]

An overbreadth analysis is a two-step process. First, a court must construe the statute to determine what is and is not covered; second, the court must determine whether the statute, as construed, criminalizes a substantial amount of protected expressive activities.[24]

The State argues that most of the speech covered by the online enticement statute is unprotected speech because this speech is integral to criminal conduct.[25] As noted

---

**15.** *See New York v. Ferber*, 458 U.S. 747, 763–64, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (holding that a statute singling out child pornography for regulation was a content-based restriction).

**16.** *Trask v. Ketchikan Gateway Borough*, 253 P.3d 616, 621 (Alaska 2011).

**17.** *Ferber*, 458 U.S. at 756–57, 102 S.Ct. 3348 (quotation omitted).

**18.** *Reno v. ACLU*, 521 U.S. 844, 849, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

**19.** *See Griswold v. City of Homer*, 252 P.3d 1020, 1030 (Alaska 2011); *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009).

**20.** *See Smith v. State, Dep't of Corrections*, 872 P.2d 1218, 1223 n. 9 (Alaska 1994); *Holton v. State*, 602 P.2d 1228, 1233 (Alaska 1979).

**21.** *Holton*, 602 P.2d at 1233.

**22.** *United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (quotation omitted); *see also Bachlet v. State*, 941 P.2d 200, 204 (Alaska App.1997) (a court will find a statute overbroad "only when it reaches a substantial amount of constitutionally protected conduct") (internal quotation omitted).

**23.** *See United States v. Williams*, 553 U.S. 285, 301, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *Kritz*, 170 P.3d at 214 n. 194.

**24.** *See Williams*, 553 U.S. at 293, 297, 128 S.Ct. 1830; *Turney v. State*, 936 P.2d 533, 539 (Alaska 1997).

**25.** *Cf. Stevens*, 130 S.Ct. at 1584; *Williams*, 553 U.S. at 297–98, 128 S.Ct. 1830.

above, when the Alaska legislature enacted the online enticement statute, it was already illegal for a person over sixteen years of age to aid, induce, cause, or encourage a person under sixteen to engage in the listed sexual activities.[26] The online enticement statute simply prohibits an adult from "enticing, soliciting, or encouraging" the same acts. Online enticement will usually, if not always, involve speech that is already prohibited—speech that is intended to persuade a minor to engage in the listed sexual activities.

For example, in *Holton v. State*, a defendant was convicted of the felony charge of contributing to the delinquency of a minor because he tried to persuade a minor to engage in fellatio.[27] The defendant agreed that fellatio between a child and an adult would be illegal, but he contended that the statute was overbroad because it applied to persuasion in the form of a mere conversation.[28] The Alaska Supreme Court held that the defendant's attempt to persuade the minor to engage in sexual activities was a solicitation for imminent illegal conduct, and that this solicitation was not protected speech.[29]

In the present case, the online enticement statute is primarily focused on speech that is intended to induce a minor to engage in otherwise prohibited sexual activities. We conclude that this statute covers a "plainly legitimate sweep" of unprotected speech.[30] But Moore submits several hypotheticals to support his argument that the statute also prohibits a substantial amount of protected speech.

Moore argues that the statute "precludes communications intended for advice." Moore gives two examples. Moore argues that the statute would apply if a fifteen-year-old boy asked his adult brother whether he should have sex with his girlfriend, and the older brother responded that he should. Moore also argues that the statute would apply if a

health care professional tells a fifteen-year-old girl to use birth control. In response, the State argues that the statute does not apply to adults who merely render advice.

We assume that these examples may involve protected speech. But, under our narrowing construction, the online enticement statute will not apply to these examples. The older brother in Moore's first hypothetical merely responded to a question and was not the instigator of the proposed sexual activities; he did not attempt to persuade the fifteen-year-old to engage in such activities. Likewise, the health care professional in the second hypothetical did not even suggest that the fifteen-year-old should engage in sexual activities, but only offered advice in the event that the girl chose to do so. Under our construction of the online enticement statute, it would not penalize this type of advice or advocacy.[31]

Moore also argues that the statute restricts speech between adults engaging in role-playing. Moore argues that the First Amendment protects the right of an adult to assume the role of a minor, and that the statute unlawfully precludes a role-playing adult from engaging in sexually explicit speech with another adult.

However, the online enticement statute does not forbid sexual role-playing, unless the role-playing adult believes the other person is under sixteen years old. We do not recognize this example as identifying a situation where the statute forbids a substantial amount of unprotected speech.[32]

Moore also argues that the statute prohibits sexually suggestive speech even when the proposed sexual activities would not be illegal. He notes that an eighteen-year old and a fifteen-year old may legally engage in consensual sexual intercourse. But the statute

---

**26.** *See* AS 11.41.436(a)(4).

**27.** 602 P.2d 1228, 1232 (Alaska 1979).

**28.** *Id.* at 1233.

**29.** *Id.* at 1234.

**30.** *See Stevens,* 130 S.Ct. at 1587 (quotation omitted).

**31.** *See State v. Ebert,* 150 N.M. 576, 263 P.3d 918, 922 (N.M.App.2011) (construing a similar online solicitation statute to exclude this type of advice).

**32.** *Id.* at 922 (recognizing that a similar statute did not "restrict adults from soliciting sex from one another over the internet").

forbids an eighteen-year-old from using a computer to ask a fifteen-year-old to engage in intercourse.

The State does not argue that this hypothetical involves an example of unprotected speech. But "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." [33] In a similar case, the defendant argued that an Illinois solicitation statute was overbroad because it would prevent a seventeen-year-old husband from asking his sixteen-year-old spouse to engage in sexual intercourse. [34] An Illinois appellate court concluded that such a prosecution was unlikely, and that the constitutionality of the statute could be reconsidered if it was applied to a married couple. [35] We likewise conclude that the legitimate reach of the online enticement statute surpasses any potentially unconstitutional applications, and that any challenges to the application of the statute can be considered on a case-by-case basis.

Moore does not appear to argue that he was engaging in protected activities in this case, or that the online enticement statute violated his personal right to free speech. To the extent he is making such an argument, it is unpersuasive. The jury's verdict established that Moore believed that he was interacting with two fourteen-year old girls. The evidence supporting this conclusion is discussed in more detail below. And Moore did not seriously contest the fact that he solicited these two chat room characters to masturbate for him. In other words, the evidence established that Moore believed that he was soliciting two minors to engage in sexual activities. This conduct does not fall within the boundaries of protected speech. [36]

As noted above, we have concluded that the requirement that the offender "solicit, entice, or encourage" a child means that the State must prove that the offender intended to cause or persuade the child to engage in listed sexual activities. So construed, this is a "statute whose legitimate reach dwarfs its arguably impermissible applications," and "whatever overbreadth may exist should be cured through case-by-case analysis." [37]

*The online enticement statute is not void for vagueness.*

■■■■ The vagueness doctrine applies when "statutory language is so indefinite that the perimeters of the prohibited zone of conduct are unclear." [38] A statute can be declared void if it "fails to give adequate notice to the ordinary citizen of what is prohibited," or if it "confer[s] unbridled discretion on government officials and thereby raise[s] the possibility of uneven and discriminatory enforcement." [39]

Moore argues that the broad language of the online enticement statute fails to give adequate notice of what is prohibited during an online conversation. But even an imprecise statute "may still be sustained (1) if the offense charged falls squarely within its prohibitions and (2) if a construction may be placed upon the statute so that its reach may be reasonably understood in the future." [40]

In this case, Moore's conduct falls squarely within the terms of the statute. There is no question that he intended to solicit the two chat room characters to masturbate for his own sexual gratification. And we have adopted a reasonable narrowing construction of this statute that will require the State to prove that a future defendant intended to cause or persuade a minor to engage in the

---

**33.** *See Williams*, 553 U.S. at 303, 128 S.Ct. 1830 (internal quotation omitted).

**34.** *People v. Smith*, 347 Ill.App.3d 446, 282 Ill. Dec. 674, 806 N.E.2d 1262, 1264 (2004). The Illinois statute at issue criminalized a person seventeen years old or older from soliciting a person under seventeen years old.

**35.** *Id.* at 1265 (citing *Ferber*, 458 U.S. at 773–74, 102 S.Ct. 3348).

**36.** *See Holton*, 602 P.2d at 1234.

**37.** *Ferber*, 458 U.S. at 773–74, 102 S.Ct. 3348 (internal quotation omitted).

**38.** *Marks v. Anchorage*, 500 P.2d 644, 646 (Alaska 1972).

**39.** *Id.*

**40.** *Summers v. Anchorage*, 589 P.2d 863, 867 (Alaska 1979) (quoting *Larson v. State*, 564 P.2d 365, 372 (Alaska 1977)).

sexual activities listed in AS 11.41.455(a). Moore does not argue that this list of sexual activities is unconstitutionally vague.

■ Moore also argues that this statute could be enforced arbitrarily. A person claiming that a statute's language allows arbitrary enforcement "has the burden to establish that [the] statute has a history of arbitrary or selective enforcement." [41] But Moore does not offer any instances of arbitrary enforcement. And, with the narrowing construction we have adopted, we expect that the potential for arbitrary enforcement will be remote.

We conclude that, with the narrowing construction we have adopted, the online enticement statute is not unconstitutionally vague.

*Moore is not entitled to a new trial on these charges.*

■ In the future, we expect that trial juries will be instructed on our construction of the phrase "solicit, entice, or encourage." But Moore's jury was not. Nonetheless, we conclude that the trial judge's failure to anticipate our construction of this statute was not plain error.

At trial, the jury was instructed that "encourage" means "to instigate, to incite action, to embolden, to assist or facilitate the commission of an act, or to promote its accomplishment." "Solicit" was defined as "to urge, advise, command, or otherwise incite another to engage in a particular act." "Entice" was defined as "to lure or induce." In the context of this case, these instructions were sufficient to inform the jury that the State was required to prove that Moore intended to cause or persuade a minor to engage in the listed sexual activities.

Moreover, this issue was not seriously contested at trial. Moore's defense was that he did not actually believe that he was communicating with children under the age of sixteen. There was no dispute that Moore believed that he was communicating with two females and that he intended to solicit them to masturbate for his own sexual gratification.

Thus the strict boundaries of the phrase "solicit, entice, or encourage" were unimportant to the trial in this case. We conclude that the failure to instruct the jury with the construction we have here adopted was harmless beyond a reasonable doubt.

*There was sufficient evidence that Moore believed that the chatroom characters were under sixteen years of age.*

■ Moore claims that the State failed to prove that he believed the chat room characters were under sixteen years of age. This was also the primary contested issue at trial. When we review the sufficiency of the evidence to support these convictions, we view the evidence in the light most favorable to the verdict and ask whether a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt.[42]

One of Moore's convictions referred to the online contact between Moore and Allie. During their first chat room contact, Moore asked for a picture a few minutes into the conversation. When he received the picture, he immediately asked how old Allie was, and she replied that she was fourteen years old. Moore said that he could see himself "getting in trouble" with someone like her. Moore asked if she was a virgin, and she said she was not, but that she had limited sexual experience. Moore asked if Allie would have a problem sleeping with someone his age. Allie said that the oldest guy she had been with was "nineteen, but don't tell my mom."

The statements Allie made to Moore indicated that she was under sixteen years old. Taken in the light most favorable to upholding the jury's verdict, Moore's statements indicated that he believed she was under sixteen years old, particularly his statement that he could get in trouble with someone like her.

■ Moore's other conviction related to his contact with Emma. During this chat room contact, Moore initially asked for Emma's age, and she responded that she was fourteen years old. When Emma said that she had a 32C bra size, Moore responded

---

**41.** *Bachlet,* 941 P.2d at 206.

**42.** *Iyapana v. State,* 284 P.3d 841, 848–49 (Alaska App.2012).

that 32C was a good size for a fourteen-year-old. He commented that he was too old for her, and gave his age as twenty-nine years old. Moore asked if she was a virgin and how much sexual experience she had.

Again, the statements Emma made indicated that she was under sixteen years old. Moore's comments indicated that he accepted that she was under sixteen years old, particularly his comment that he was too old for her.

In addition, when the police officers interviewed Moore, he admitted that he had masturbated online, that he could have been viewed by minors under age eighteen, that he did talk about sexual matters and masturbate for minors under age eighteen, and that he knew that what he had done was illegal.

Moore argues that there was other evidence suggesting that he did not believe that the chat room characters were under sixteen. He argues that he expressed doubt about Allie's age, that the chats took place in a regular Alaska regional chat room (not a chat room dedicated to young girls or sex), that a person has to assert that they are at least eighteen to enter a Yahoo! chat room, and that the pictures of Allie that he received made it appear that she was much older.

All of these arguments would require us to reweigh the evidence and to decide for ourselves whether Moore actually believed that these chat room characters were under sixteen. But when we review the sufficiency of the evidence, we do not weigh the evidence or assess credibility: these are questions for the trial jury.[43] It is possible that a juror could have believed Moore's testimony that he believed he was chatting with role-playing adults. On the other hand, a juror could also have rationally concluded Moore was hoping to find underage girls who had entered the chat room, girls who would be willing to interact with an older man. This latter con-

clusion establishes that the evidence was sufficient to support Moore's convictions.[44]

*The trial judge did not commit plain error when he admitted the evidence relating to the charge of distribution of indecent material.*

 As noted above, Moore's conviction for distribution of indecent material to a minor was vacated after the federal district court held that this statute was unconstitutional. Moore's conviction for this vacated charge was based on his online interaction with Groupie, particularly the session where he allowed Groupie to watch him while he was masturbating. Moore now argues that this evidence would not have been admissible at a trial on his online enticement convictions, and that he should receive a new trial on those charges.

Moore did not object to this evidence in the trial court, so now he must show plain error.[45] Plain error involves "such egregious conduct as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice."[46]

Moore's argument overlooks a fundamental aspect of our normal appellate review process. We generally review a trial court's ruling based on the record as it existed at the time the court made its ruling. "The normal rule is that, absent plain error, a party challenging a trial court's ruling may not rely on an argument or on evidence that was not brought to the trial court's attention at the time the trial court made its ruling."[47]

We find no plain error in this case. As Moore notes in his brief, "Moore's statements during the chats with [Groupie] provided stronger evidence that Moore actually believed the people he was chatting with were under 16." We also note that the evidence that Moore allowed Groupie to watch him masturbating suggested the motive for his interactions with Allie and Emma: he intended to cause or persuade them to en-

---

**43.** *Iyapana*, 284 P.3d at 849.

**44.** *See Maloney v. State*, 294 S.W.3d 613, 620–21 (Tex.Ct.App.2009).

**45.** *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

**46.** *Id.* (internal quotation omitted).

**47.** *Waters v. State*, 64 P.3d 169, 171 (Alaska App. 2003).

gage in masturbation for his own gratification. Thus the evidence of Moore's interactions with Groupie was not merely character evidence. This evidence was relevant to prove Moore's motive and intent during his interactions with Allie and Emma.[48]

We conclude that the trial judge did not commit plain error by allowing the introduction of the evidence relating to the charge of distribution of indecent material.

### Conclusion

We conclude that language of the online enticement statute requiring the offender to "solicit, entice or encourage" a minor to engage in listed sexual activities must be interpreted to require the State to prove that the offender intended to cause or persuade the minor to engage in the listed sexual activities. This statute does not penalize advice similar to the examples we have discussed, including advice from a family member or a medical provider. Read in this light, the statute is not unconstitutionally overbroad or vague. The failure to so instruct the jury was harmless in Moore's case. We conclude that there was sufficient evidence to support Moore's convictions and that there was no plain error involved with the introduction of the evidence relating to his conviction for distribution of indecent material to a minor.

We therefore AFFIRM the superior court's judgment.

---

**48.** *See* Alaska Evidence Rule 404(b).