Kevin BENBOE, Appellant,

v.

STATE of Alaska, Appellee.

No. A-1529.

Court of Appeals of Alaska.

June 5, 1987.

Tina Kobayashi, Asst. Public Defender, Juneau, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchor-age, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Kevin Benboe was originally convicted of sexual assault in the second degree and was sentenced by Superior Court Judge Rodger W. Pegues to a term of eight years with one year suspended. On appeal, this court ordered Benboe's sentence reduced to a term of no more than eight years with four years suspended. *Benboe v. State*, 698 P.2d 1230, 1233 (Alaska App.1985). On May 22, 1985, Judge Pegues reimposed Benboe's sentence in conformity with this court's order. As a special condition of probation, Judge Pegues ordered Benboe, following release from prison, to complete an intensive program of sexual offender rehabilitation, if he had not already successfully completed such a program while incarcerated.

In addition, Judge Pegues separately ordered Benboe to attend a sexual offender rehabilitation program while incarcerated. Specifically, in his sentencing remarks, the judge told Benboe:

I would also order him [Benboe] to attend one [an intensive sex offender program] while he is incarcerated and to undertake any program for alcohol and drug addiction which is recommended while he is in prison.

On June 12, 1985, the court entered a formal written judgment, which specified, in relevant part:

While incarcerated, the defendant is ordered to participate in any sexual-offender treatment offered to him by the Department of Corrections.

This order was set out as a separate provision of the written judgment, and not as a condition of probation.[1]

---

1. In relevant part, the Amended Judgment and Commitment entered following Benboe's resentencing provided:

 IT IS ORDERED that the defendant is committed to the custody of the Commissioner of the Department of Corrections, State of Alaska, or his authorized representative, for a period of eight (8) years.

 IT IS FURTHER ORDERED that four (4) years of said sentence is suspended and the

Approximately four months later, on October 14, 1985, while Benboe was in the process of serving the unsuspended portion of his sentence, the state moved to revoke Benboe's probation. The state claimed that, by declining to be transferred from the Lemon Creek Correctional Facility in Juneau to the Hiland Mountain Sexual Offender Treatment Program in Eagle River, Benboe had violated the court's order to participate in sexual offender therapy while incarcerated.

Benboe filed a written opposition to the petition, in which he relied on *Rust v. State*, 582 P.2d 134, *modified on rehearing*, 584 P.2d 38 (Alaska 1978), to argue that the court did not have the authority to order his placement in a rehabilitation program while he was incarcerated. In the alternative, Benboe argued that the order requiring his participation had not been imposed as a condition of probation.

The state, in turn, filed a written response to Benboe's opposition. The state pointed out that the challenged order did not purport to direct the Department of Corrections to place Benboe in a treatment program; rather, it directly ordered Ben-

boe to participate in one. Accordingly, the state reasoned that the court's order was distinguishable from the order in *Rust* and was not violative of the separation of powers doctrine. Relying on *Gant v. State*, 654 P.2d 1325 (Alaska App.1982), the state further maintained that "good cause" existed for the court to impose the suspended portion of Benboe's sentence, even though Benboe was not yet on probation.

On December 16, 1985, Judge Pegues issued a memorandum decision and order accepting the state's position. The judge concluded that good cause for revocation of Benboe's probation would be established if, following an evidentiary hearing, it appeared that Benboe had failed to obey the order contained in the written judgment requiring his participation in "any sexual offender treatment offered to him by the Department of Corrections."

At a subsequent evidentiary hearing, the evidence established that Benboe had originally applied for a transfer from the Lemon Creek Correctional Facility in Juneau to the Hiland Mountain Sexual Offender Treatment Program in Eagle River. When he was ultimately accepted in the Hiland

defendant shall be and hereby is placed on probation to terminate on October 18, 1991, under the following conditions:

1. The defendant shall violate no state, federal, or municipal laws.

2. The defendant shall obey all rules and regulations of the probation officer and report in person to the probation officer once each month or more often as may be reasonably required.

3. The defendant shall reside in a home approved by the probation officer and shall not change residences or leave the state of Alaska without the prior permission of the probation officer.

4. The defendant shall work steadily and support dependants for whom he is legally responsible. He shall not quit a job without the prior permission of the probation officer. When out of work, he is required to notify the probation officer immediately.

5. The defendant shall not consume alcohol and shall not enter places whose primary business is to sell or dispense alcohol.

6. At the request of the probation officer, the defendant shall submit to alcohol screening by means of breathalyzer, urinalysis or blood test.

7. The defendant shall not use or possess marijuana or other non-prescription drugs.

8. At the request of the probation officer, the defendant shall submit to drug screening by urinalysis or blood test.

9. If the defendant has not successfully completed an intensive in-patient sex offender rehabilitation program in prison, he is required to immediately enter and complete such a program upon release. The sex offender treatment program may be in-patient or out-patient as deemed appropriate by the probation officer and as revealed by psychological evaluation. Attendance at the sex offender treatment program may require the defendant to relocate his residence.

10. The defendant shall not reside in the same neighborhood as the victim, shall avoid all contacts with the victim and her mother, and shall not frequent places where he is likely to come into contact with either of them.

11. The defendant shall not be in the presence of any female under the age of 16 unless there is a responsible adult present at the same time and in their immediate presence.

While incarcerated, the defendant is ordered to participate in any sexual-offender treatment offered to him by the Department of Corrections.

Mountain Program, however, Benboe changed his mind and decided that he wanted to remain in Juneau; he appealed the classification. The Department of Corrections granted the appeal and allowed Benboe to remain in Juneau.

Benboe's action was apparently prompted by his wife's threats to seek a divorce if he moved from Juneau to Eagle River and by his own desire to avoid losing a job at Lemon Creek that paid well and enabled him to help support his wife and child. Moreover, plans to establish a new sexual offender treatment program at Lemon Creek had been in existence for a considerable period of time, and a start-up date for that program was imminent. In appealing his placement to Hiland Mountain, Benboe apparently contemplated enrollment in the Lemon Creek program when it became available. In the interim, Benboe made arrangements to commence monthly sexual offender therapy sessions with a private therapist in Juneau.

The state alleged below, and Judge Pegues found, that Benboe's decision to decline placement at Hiland Mountain in favor of remaining in Juneau amounted to a violation of the court's sentencing order. The court further found that the violation amounted to good cause for revocation of Benboe's probation. After a disposition hearing, the court revoked probation and ordered Benboe to serve eighteen months of the four-year suspended portion of his sentence.

■ On appeal, Benboe renews his argument that the superior court had no authority to revoke his probation. We find that this argument has merit. Ordinarily, a court has the authority to revoke probation only when the state proves that a specific condition of probation has been violated.

> Even though the probationer's liberty is conditional, he still should know what to do to retain that liberty. A probationer who has not violated a condition of probation is entitled to keep his liberty.

*Holton v. State*, 602 P.2d 1228, 1238–39 (Alaska 1979) (footnote omitted). Thus, the absence of proof that a specific condition of probation has been violated will normally preclude a finding of "good cause" to revoke probation. *Holton*, 602 P.2d at 1239.[2]

■ One narrow exception has been carved out from this rule: where the accused is shown to have committed a new crime, both this court and the Alaska Supreme Court have found "good cause" for revocation of probation, even when the accused's probationary term had not yet commenced and when compliance with the law had not expressly been made a condition of probation in the original judgment. *See Wozniak v. State*, 584 P.2d 1147, 1148 (Alaska 1978); *Gant v. State*, 654 P.2d 1325 (Alaska App.1982). The rationale for this exception is that the language of AS 12.55.085(b) expressly authorizes the court to revoke probation "at any time" if the accused is shown to have been "engaging

---

**2.** Although AS 12.55.110 broadly provides that a suspended sentence "shall not be revoked except for good cause shown," in *Holton*, the supreme court squarely decided that this provision does not authorize revocation based on a generalized finding of "good cause." Rather, the court, relying on *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973), construed AS 12.55.110 to apply only to the second step of the revocation process, which is triggered after a specific violation has been proved:

> As Holton argues, the good cause requirement in AS 12.55.110 refers to the finding at the second step of the revocation process:
>
> > The requirement that probation revocation follow after a showing of "good cause" requires the trial judge to find that continuation of probationary status would be at odds with the need to protect society and society's inter-

est in the probationer's rehabilitation. Revocation should follow violation of a condition of probation when that violation indicates that the corrective aims of probation cannot be achieved.

*Trumbly v. State*, 515 P.2d at 709.

> Thus, the state must prove that Holton violated a condition of probation.

*Holton*, 602 P.2d at 1239. In the present case, the state characterizes this passage from *Holton* as *dictum* and urges us to disregard it. Yet even if resolution of the issue addressed in the quoted passage was not strictly necessary to the decision in *Holton*, the passage still amounts to an unequivocal expression of the unanimous supreme court's interpretation of AS 12.55.110. Absent some compelling reason for departing from this interpretation—and the state has advanced none here—we decline to do so.

in criminal practices...."[3] Thus, the statute specifically serves notice that a failure to comply with the law will subject the accused to revocation of probation. Beyond the exception for criminal offenses, however, "good cause" cannot justify revocation of probation unless a specific condition of probation has been infringed. *Holton*, 602 P.2d at 1238 n. 18 (construing *Wozniak v. State*, 584 P.2d at 1148).[4]

■ In the present case, the state does not contend that the order requiring Benboe to participate in treatment was entered as a condition of probation. On its face, the order appears to have been entered as a direct and unconditional requirement of the judgment. It is not included among the conditions of probation. Because the order was not expressly made a condition of probation and, by its own terms, covered a period of time before Benboe's contemplated release on probation, it served no clear notice upon Benboe that the probationary status of his sentence hinged on his compliance with it. To the contrary, by expressly providing for treatment as a condition of probation if Benboe had not successfully completed a course of treatment prior to his release, the judgment implied that Benboe's probationary status was not conditioned upon his participation in treatment while incarcerated.

The state seeks to skirt this problem by arguing that Benboe's disregard of the order requiring treatment amounts to a criminal contempt and therefore qualifies as good cause for revocation under *Gant* and *Wozniak*. This argument, although perhaps plausible at first blush, must ultimately fail, for it posits the validity of the challenged order.[5] It is axiomatic that the trial courts' sentencing authority derives from the legislature. The court is given broad authority to impose conditions of probation regulating the conduct of the accused, "while on probation." *See* AS 12.-55.100.[6]

---

**3.** AS 12.55.085(b) provides:

At any time during the probationary term of the person released on probation, a probation officer may, without warrant or other process, rearrest the person so placed in the officer's care and bring the person before the court, or the court may, in its discretion, issue a warrant for the rearrest of the person and may revoke and terminate the probation, if the interests of justice require, and if the court, in its judgment, has reason to believe that the person placed upon probation is violating the conditions of probation, or engaging in criminal practices, or has become abandoned to improper associates, or a vicious life.

**4.** The state challenges the validity of this rationale, arguing that AS 12.55.085 does not apply to suspended executions of sentence, but only to suspended impositions of sentence imposed under AS 12.55.085(a). Again, however, *Holton* controls the state's argument. In *Holton*, the supreme court specifically interpreted AS 12.55.-085(b) to apply to suspended executions of sentence, stating: "We have consistently referred to AS 12.55.085 as the authority for suspending sentences." *Holton*, 602 P.2d at 1239 (footnote omitted).

**5.** Moreover, the argument is problematical in that Benboe was not charged with criminal contempt in the petition to revoke probation and Judge Pegues did not find him guilty of contempt. We are unable to say what defenses, if any, Benboe may have asserted had he been specifically charged with this offense. Nor can we say with any degree of confidence that the court would have found that Benboe committed contempt, had such a charge specifically been made.

**6.** AS 12.55.100 provides:

*Conditions of probation.* (a) While on probation and among the conditions of probation, the defendant may be required

(1) to pay a fine in one or several sums;

(2) to make restitution or reparation to aggrieved parties for actual damages or loss caused by the crime for which conviction was had;

(3) to provide for the support of any persons for whose support the defendant is legally responsible; and

(4) to perform community work in accordance with AS 12.55.055.

(b) The defendant's liability for a fine or other punishment imposed as to which probation is granted shall be fully discharged by the fulfillment of the terms and conditions of probation.

The conditions enumerated in AS 12.55.100 are not exclusive, since, by its own terms, the statute provides that they are "among the conditions of probation" that the court may impose. In this regard, we note that AS 12.55.080 generally provides that the court may "place the defendant on probation for a period and upon the terms and conditions as the court considers best." This provision permits the imposition of a broad range of conditions, provided that the conditions are "reasonably related to the reha-

The court's authority to enter direct orders regulating the conduct of the accused while the accused is not on probation is more narrowly circumscribed. The scope of the court's sentencing authority is generally defined in AS 12.55.015.[7] Under subsection (a) of this provision, the court is empowered to impose fines, order the accused placed on probation under specified conditions, impose periodic or continuous terms of imprisonment, require restitution, order community work, and suspend the execution or imposition of a sentence. Subsection (c) of the statute allows the court to forfeit property, suspend or revoke licenses, remove persons from office, or impose other civil penalties where the power to take such action is otherwise conferred on the court by law. Subsection (d) expressly authorizes the court to require drug abuse treatment as a condition of probation or as a condition of the suspended execution or imposition of a sentence, but only when the accused has been convicted of misconduct involving a controlled substance.

Apart from the provisions of subsection (d) relating to drug offenders, nothing in AS 12.55.015 expressly or impliedly confers authority on the sentencing court to require the accused to participate in treatment, except as a condition of probation. In particular, we find nothing empowering the court, as part of a sentence of imprisonment, to enter a direct order requiring the accused to participate in treatment. Nor are we aware of any authority for the proposition that the court has inherent power to enter such orders in the absence of legislative authorization.

 We conclude that the sentencing court exceeded the scope of its sentencing powers by ordering Benboe to participate in treatment while incarcerated.[8] Accord-

---

bilitation of the offender and the protection of the public and [are not] unduly restrictive of liberty." *Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977); *see also Sprague v. State,* 590 P.2d 410 (Alaska 1979); *Tiedeman v. State,* 576 P.2d 114, 116 n. 11 (Alaska 1978).

7. AS 12.55.015 provides:
 *Authorized sentences.* (a) Except as limited by AS 12.55.125–12.55.175, the court, in imposing sentence on a defendant convicted of an offense, may singly or in combination
 (1) impose a fine when authorized by law and as provided in AS 12.55.035;
 (2) order the defendant to be placed on probation under conditions specified by the court which may include provision for active supervision;
 (3) impose a definite term of periodic imprisonment;
 (4) impose a definite term of continuous imprisonment;
 (5) order the defendant to make restitution as provided in AS 12.55.045;
 (6) order the defendant to carry out a continuous or periodic program of community work as provided in AS 12.55.055;
 (7) suspend execution of all or a portion of the sentence imposed as provided in AS 12.-55.080;
 (8) suspend imposition of sentence as provided in AS 12.55.085.
 (b) The court, in exercising sentencing discretion as provided in this chapter, shall impose a sentence involving imprisonment when
 (1) the defendant deserves to be imprisoned, considering the seriousness of the present offense and the defendant's prior criminal history, and imprisonment is equitable considering sentences imposed for other offenses and other defendants under similar circumstances;
 (2) imprisonment is necessary to protect the public from further harm by the defendant; or
 (3) sentences of lesser severity have been repeatedly imposed for substantially similar offenses in the past and have proven ineffective in deterring the defendant from further criminal conduct.
 (c) In addition to the penalties authorized by this section, the court may invoke any authority conferred by law to order a forfeiture of property, suspend or revoke a license, remove a person from office, or impose any other civil penalty.
 (d) A court, in imposing sentence on a defendant convicted of misconduct involving a controlled substance in the first, second, third, fourth, fifth, or sixth degree, may, in addition to any mandatory minimum sentence required by law, order the defendant to participate in a program for treatment of drug abusers if the court determines that the defendant is a drug abuser. Participation in such a program may be imposed as a condition of probation, a condition of suspended execution of sentence, or a condition of suspended imposition of sentence. Nothing in this subsection shall be construed to reduce any mandatory minimum sentence.

8. In revoking probation, Judge Pegues correctly distinguished *Rust v. State,* 582 P.2d 134, 138, *modified on rehearing,* 584 P.2d 38 (Alaska 1978), by pointing out that the order in the

ingly, any failure to abide by that order could not have served as a predicate for a finding of criminal contempt.

■ Even assuming that Benboe's disregard of a direct order requiring participation in treatment would be tantamount to a criminal contempt and would therefore amount to good cause for revocation of probation, the court's finding of good cause in this case would not be justified, since the record does not support a finding that Benboe violated the order actually entered. Judge Pegues' verbal sentencing remarks required only that Benboe "attend one [a sexual offender treatment program] while he is incarcerated and to undertake any program for alcohol or drug addiction which is recommended while he is in prison."[9] Nothing in the court's sentencing remarks purported to preclude Benboe from selecting between alternative programs, nor did the court's remarks require Benboe to participate in the first available program or in the first program that might be recommended. Similarly, the court's remarks did not require successful completion of a program.

■ In contrast with the court's verbal sentencing remarks, its subsequent written judgment for the first time specifically directed Benboe to "participate in any sexual-offender treatment offered to him by the Department of Corrections." To the extent that the written judgment went beyond the

court's verbal sentencing order and thereby created ambiguity, it is well-settled that the initially imposed verbal order must govern. *Whittlesey v. State*, 626 P.2d 1066, 1067–68 (Alaska 1980); *Boyles v. State*, 647 P.2d 1113, 1119 n. 7 (Alaska App.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1437, 75 L.Ed.2d 795 (1983); *Burrell v. State*, 626 P.2d 1087, 1089 (Alaska App.1981). *See also Chase v. State*, 479 P.2d 337 (Alaska 1971).

The state attempts to argue that, in context, the discrepancy between the written and verbally imposed sentencing orders is insignificant, because Judge Pegues specifically found that Benboe knew that an appeal of his classification to Hiland Mountain would leave insufficient time to allow his participation in another treatment program. This argument mischaracterizes the trial court's findings.

The court did find that, at the time Benboe appealed his classification to Hiland Mountain, he was aware that the appeal process would leave insufficient time to complete the Hiland Mountain program. The evidence at the probation revocation hearing, however, indicates that Benboe hoped to participate in the sexual offender treatment program that was in the process of opening at Lemon Creek. Nothing in the court's findings implies that Benboe believed his appeal would preclude participation in that program, and there is nothing in the record to indicate that Benboe

present case applied to Benboe directly and did not purport to require the Department of Corrections to provide treatment to Benboe. Nevertheless, Judge Pegues did not separately consider or rule on the question of whether he had authority to enter a direct order requiring Benboe to participate in treatment.

Although the state has not argued the issue of waiver on appeal, it is worth noting that Judge Pegues found that, by previously agreeing to the entry of a similar order, Benboe had arguably waived any objection to the order entered in this case. The court's comment concerning waiver appears to be factually unsupported. While his sentence appeal was pending, Benboe attempted to expedite his placement in a treatment program by requesting a modification of the original judgment. As a result of the request, the court ordered the Department of Corrections to provide sexual offender treatment to

Benboe if such treatment became available. The order did not apply to Benboe directly or purport to require his participation in treatment. For this reason, the prior order affords no basis for concluding that Benboe waived objection to the order challenged in the present case, which does directly require Benboe's participation. In any event, even assuming Benboe might properly be found to have agreed to the entry of the challenged order, he would not be foreclosed from challenging the court's authority to enter the order. If the order exceeded the scope of the court's sentencing powers, it could not be rendered valid by Benboe's agreement to be bound by it.

9. The subsequently entered written judgment did not incorporate the requirement of participation in a recommended drug or alcohol program.

 

would not be able to participate in treatment at Lemon Creek prior to release from prison.[10] The record does not support a conclusion that Benboe violated the court's verbal order.

The order revoking probation is REVERSED.[11]

---

10. The court's findings do imply that Benboe should have known he would not have time to successfully complete a sexual offender program at Lemon Creek. In this regard, however, it is significant that neither the court's verbal sentencing remarks nor its subsequent written judgment required successful completion of therapy while incarcerated.

11. Our resolution of the case makes it unnecessary to address Benboe's double jeopardy claim.