**Blake GWALTHNEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6847.

Court of Appeals of Alaska.

Oct. 16, 1998.

---

William R. Satterberg, Jr., Fairbanks, for Appellant.

Michael J. Stark, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

MANNHEIMER, Judge.

Blake Gwalthney was convicted of attempted first-degree sexual abuse of a minor; as part of his sentence, he was ordered to complete a sex offender treatment program while incarcerated. He failed to do this.

While Gwalthney was still in prison (that is, before the date of Gwalthney's anticipated release on mandatory parole), the Parole Board held a hearing to decide whether Gwalthney's parole should be revoked due to his failure to complete the court-ordered rehabilitative treatment. Gwalthney chose not to appear at this hearing. The Parole Board found that Gwalthney had violated the treatment provision of his sentence, and so the Board anticipatorily revoked Gwalthney's parole.

Gwalthney then petitioned the superior court for a writ of habeas corpus; he argued that he was entitled to parole release even though he had failed to complete sex offender treatment. The superior court denied Gwalthney's petition, and Gwalthney now appeals the superior court's decision.

Gwalthney first asks us to decide whether the Parole Board had the authority to anticipatorily revoke his scheduled mandatory parole release on account of Gwalthney's failure to complete the sex offender treatment ordered by the sentencing court. We recently decided this very issue. In *Webb v. Department of Corrections*, we held that the Parole Board can "anticipatorily revoke the scheduled [mandatory] parole release of prisoners who, while still incarcerated, engage in behavior that would warrant revocation of their parole".[1] The specific behavior at issue in *Webb* was the defendant's failure to complete the sex offender treatment ordered by the sentencing court—the same behavior that led to the anticipatory revocation of Gwalthney's parole.[2]

Gwalthney recognizes that *Webb* controls his case, but he asks us to re-examine *Webb*.

---

1. 963 P.2d 1074, 1075.

2. *Id.*, 963 P.2d 1074, 1075–1076.

We now do so and, for the reasons explained here, we reaffirm *Webb*.

The origins of the present controversy are found in *Benboe v. State* and the legislative response to that decision.[3]

In *Benboe*, the superior court sentenced a defendant to undergo rehabilitative treatment while serving his prison sentence; on appeal, the defendant contended that this provision of his sentence was illegal. This court agreed.

At the time *Benboe* was decided, AS 12.55.015 contained only one provision—subsection (a)(2)—that authorized a sentencing court to order a defendant to undertake rehabilitative treatment. Under subsection (a)(2), a sentencing court can place a defendant on probation "under conditions specified by the court". As *Benboe* acknowledges, subsection (a)(2) empowers a sentencing court to order a defendant to engage in rehabilitative treatment during the defendant's probation (that is, after a defendant's release from prison).[4] However, *Benboe* held that neither subsection (a)(2) nor any other then-existing provision of AS 12.55.015 authorized a sentencing court to order a defendant "to participate in [rehabilitative] treatment while incarcerated".[5]

In response to *Benboe*, the legislature amended AS 12.55.015 by adding subsection (a)(10).[6] Subsection (a)(10) authorizes a sentencing court to "order the defendant, while incarcerated, to participate in or comply with the treatment plan of a rehabilitation program that is related to the defendant's offense or to the defendant's rehabilitation[,] if the program is made available to the defendant by the Department of Corrections".

In the same session law, the legislature provided penalties for a defendant's failure to comply with a sentencing court's order under AS 12.55.015(a)(10)—that is, an order to par-ticipate in rehabilitative treatment while incarcerated. The legislature amended AS 12.55.085(b) to explicitly empower a sentencing court to revoke a defendant's probation for "violating an order of the court to participate in or comply with the treatment plan of a rehabilitation program under AS 12.55.015(a)(10)".[7] The legislature also amended AS 33.16.220(a) to explicitly empower the Parole Board to revoke a defendant's parole if the defendant "has violated an order of the court to participate in or comply with the treatment plan of a rehabilitation program under AS 12.55.015(a)(10)".[8]

In cases where a prisoner withdraws or is ejected from rehabilitative treatment offered by the Department of Corrections, it will often be obvious, well in advance of the defendant's projected release date, that the defendant has violated the sentencing court's order "to participate in treatment ... under AS 12.55.015(a)(10)". The issue we faced in *Webb* was whether the Parole Board was obliged to wait until that scheduled release date before commencing parole revocation proceedings, or whether the Board could instead anticipatorily revoke a prisoner's parole for failure to comply with the sentencing court's order.

In *Webb*, we analogized the Parole Board's situation to the situation faced by a sentencing court when it is asked to revoke a defendant's probation. (As explained above, the legislature has declared that if a defendant violates an order to participate in rehabilitative treatment while incarcerated, this is a basis both for revoking the defendant's probation and for revoking the defendant's parole.) Alaska law already recognized a sentencing court's authority to revoke a defendant's probation for violations occurring before the defendant's release on probation.[9] In *Webb*, we recognized an analogous authority in the Parole Board—to revoke a prisoner's parole for vi-

---

3. 738 P.2d 356 (Alaska App.1987).

4. 738 P.2d at 360–61 & n. 6.

5. *Id.*, 738 P.2d at 361.

6. *See* SLA 1990, ch. 188, § 1.

7. AS 12.55.085(b)(3), enacted by SLA 1990, ch. 188, § 2.

8. AS 33.16.220(a)(2), enacted by SLA 1990, ch. 188, § 10.

9. *See Webb*, 963 P.2d at 1076 & n. 4.

olations occurring before the prisoner's release on parole.[10]

Gwalthney claims that our decision in *Webb* is inconsistent with the Alaska Supreme Court's decision in *Smith v. Department of Corrections.*[11] We have examined the *Smith* decision, and we find no inconsistency between *Smith* and *Webb*. We therefore re-affirm our decision in *Webb*.

Gwalthney raises one other argument. He claims that, even if the Parole Board has the authority to anticipatorily revoke the parole of defendants who fail to complete court-ordered rehabilitative treatment, the Parole Board acted prematurely in his particular case because Gwalthney was under no obligation to complete sex offender treatment while he was in prison. To analyze Gwalthney's claim, and to explain the reasons why we reject it, we must detail the history of Gwalthney's sentencing.

Gwalthney was convicted of attempted first-degree sexual abuse of a minor, a class A felony.[12] As a first felony offender, Gwalthney faced a 5–year presumptive term for this crime.[13] The sentencing judge concluded that Gwalthney had exceptional potential for rehabilitation, and the judge further concluded that it would be manifestly unjust if the court failed to adjust Gwalthney's presumptive term on account of his potential for rehabilitation.[14] The judge therefore referred Gwalthney's sentencing to the three-judge sentencing panel.[15]

The three-judge panel agreed that Gwalthney had exceptional potential for rehabilitation and that, because of this heightened potential for rehabilitation, failure to modify Gwalthney's 5–year presumptive term would be manifestly unjust. The panel therefore imposed the following sentence:

IT IS ORDERED [that] the defendant is committed to the custody of the Commissioner of the Department of Corrections for a period of ... 5 years[,] presumptive[.]

The defendant is ineligible for parole, except as provided in AS 33.16.090(b) and (c) [and (e) ].[16]

IT IS FURTHER ORDERED that the defendant is to complete a sex offender [treatment] program approved by the Department of Corrections. The defendant [is] eligible for discretionary parole during the last half of his sentence if he successfully completes the program.

Somewhat surprisingly, Gwalthney argues that this judgement did not require him to complete sex offender treatment at all. Gwalthney interprets the judgement to mean that he could engage in sex offender treatment if he wished, but if he chose not to complete sex offender treatment then he would not be eligible for discretionary parole during the latter half of his sentence.

The short answer to Gwalthney's contention is that he has misread the judgement. The three-judge panel did not give Gwalthney a choice about engaging in sex offender treatment. The panel "ordered ... the defendant ... to complete a sex offender [treatment] program approved by the Department of Corrections". The panel then provided that, if Gwalthney completed the mandated sex offender treatment, he would be eligible for discretionary parole during the second half of his 5–year sentence.

 There is a longer answer to Gwalthney's contention: if the judgement were construed in the manner he suggests, it would be illegal.

10. *Id.,* 963 P.2d at 1076.

11. 872 P.2d 1218, 1226–27 (Alaska 1994).

12. AS 11.41.434(a)(1); AS 11.31.100(d)(2).

13. AS 12.55.125(c)(1).

14. *See Smith v. State,* 711 P.2d 561 (Alaska App. 1985) (recognizing the non-statutory mitigating factor of exceptional potential for rehabilitation).

15. *See* AS 12.55.165—175.

16. The judgement, as actually worded, fails to mention subsection (e) of AS 33.16.090—the subsection that allows the three-judge panel to make a defendant eligible for discretionary parole during the second half of a presumptive sentence if the defendant completes all rehabilitative programs ordered by the three-judge panel. Given the three-judge panel's explicit direction that Gwalthney be eligible for parole under these circumstances, it appears that the failure to mention AS 33.16.090(e) was unintentional.

In AS 12.55.175(e), the legislature has limited the authority of the three-judge panel to mitigate a presumptive term when a case is referred to the three-judge panel on the basis of the defendant's exceptional potential for rehabilitation. That statute provides:

> (e) If the three-judge panel determines ... that manifest injustice would result from imposition of the presumptive term and the panel also finds that the defendant has an exceptional potential for rehabilitation and that a sentence of less than the presumptive term should be imposed because of the defendant's exceptional potential for rehabilitation, the panel
>
> (1) shall sentence the defendant to the presumptive term required under AS 12.55.125;
>
> (2) shall order the defendant under AS 12.55.015 to engage in appropriate programs of rehabilitation; and
>
> (3) may provide that the defendant is eligible for discretionary parole under AS 33.16.090 during the second half of the sentence imposed under this subsection if the defendant successfully completes all rehabilitation programs ordered under (2) of this subsection.

Under this statute, the three-judge panel is obligated to do two things: the panel (1) shall sentence the defendant to the applicable presumptive term, and (2) shall order the defendant to engage in appropriate rehabilitative programs under AS 12.55.015. The three-judge panel is then given the discretion to do a third thing: the panel (3) may grant the defendant eligibility for discretionary parole during the second half of the sentence, provided the defendant completes the rehabilitative treatment specified in paragraph (2).

A straightforward reading of Gwalthney's judgement shows that the three-judge panel scrupulously adhered to the mandate of AS 12.55.175(e). The panel sentenced Gwalthney to the applicable 5–year presumptive term, the panel ordered Gwalthney to complete sex offender treatment, and the panel then provided that, if Gwalthney completed the rehabilitative treatment, he would be eligible for discretionary parole during the last half of his sentence.

If we·read the judgement as Gwalthney suggests (that is, if we interpreted the judgement as giving Gwalthney the choice whether to accept or decline sex offender treatment), then the judgement would be in violation of AS 12.55.175(e)(2)—for that section requires the three-judge panel to order Gwalthney to complete appropriate rehabilitative treatment.

For these two reasons, we reject Gwalthney's suggested interpretation of the judgement. Gwalthney was ordered to complete sex offender treatment, regardless of his wishes.

Gwalthney offers an alternative argument. He asserts that, even if the three-judge panel did order him to complete sex offender treatment, the panel did not require Gwalthney to complete this rehabilitative treatment prior to his release from prison. According to Gwalthney's interpretation, the judgement only requires him to complete this rehabilitative treatment sometime prior to his final discharge from state supervision—that is, sometime prior to his final discharge from parole. Thus, Gwalthney concludes, he was not yet in violation of the three-judge panel's order, and the Parole Board wrongly revoked his parole.

The three-judge panel did not explicitly fix a deadline for Gwalthney's completion of sex offender treatment; the judgement states only that Gwalthney "is to complete a sex offender [treatment] program approved by the Department of Corrections". However, as explained above, this provision appears in the judgement because AS 12.55.175(e)(2) requires the judgement to contain such a provision. To interpret Gwalthney's judgement, we must therefore look to this governing statute.

AS 12.55.175(e)(2) declares that, when the three-judge panel accepts a case because of the defendant's exceptional potential for rehabilitation, the panel "shall order the defendant under AS 12.55.015 to engage in appropriate programs of rehabilitation". As explained above, there are two clauses of AS 12.55.015 that authorize a sentencing court to order a defendant to complete rehabilitative treatment.

The first is AS 12.55.015(a)(2), which authorizes the court to place a defendant on probation "under conditions specified by the court"—including a condition that the defendant undergo rehabilitative treatment.[17] The second is AS 12.55.015(a)(10), which authorizes a sentencing court to "order the defendant, while incarcerated, to participate in or comply with the treatment plan of a rehabilitative program that is related to the defendant's offense or to the defendant's rehabilitation[,] if the program is made available to the defendant by the Department of Corrections".

Thus, when AS 12.55.175(e)(2) speaks of the three-judge panel's obligation to order the defendant to engage in appropriate programs of rehabilitation "under AS 12.55.015", the statute contemplates two different types of sentencing orders: an order under AS 12.55.015(a)(10) for the defendant to engage in rehabilitative treatment while incarcerated, and an order under AS 12.55.015(a)(2) for the defendant to engage in rehabilitative treatment while on probation.

If the three-judge panel had suspended any portion of Gwalthney's sentence of imprisonment and had sentenced Gwalthney to a period of probation, then the panel's judgement would conceivably be ambiguous as to Gwalthney's deadline for completing sex offender treatment—for the panel would have the authority to order such treatment either during Gwalthney's imprisonment or during his ensuing release on probation. But the three-judge panel did not suspend any portion of Gwalthney's sentence of imprisonment; he was sentenced to serve 5 years. Thus, in context, there is no ambiguity in Gwalthney's judgement. The three-judge panel ordered him to complete sex offender treatment while incarcerated, as authorized by AS 12.55.015(a)(10).

To sum up: The three-judge panel ordered Gwalthney to complete sex offender treatment while he was in prison, and he failed to do this. Because Gwalthney failed to complete the court-ordered sex offender treatment, the Parole Board had good cause to revoke Gwalthney's mandatory parole. And because the Parole Board is empowered to act prospectively in such cases (that is, empowered to revoke a prisoner's mandatory parole before the prisoner is actually released on parole), the superior court correctly denied Gwalthney's petition for writ of habeas corpus.

The judgement of the superior court is AFFIRMED.

---

**17.** *Benboe v. State, supra;* AS 12.55.100(a)(5).