NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| WILSON WILLIAM FOX, | Court of Appeals No. A-12640 |
| Appellant, | Trial Court No. 4BE-13-273 CI |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2633 — February 1, 2019 |

Appeal from the Superior Court, Fourth Judicial District, Bethel, Charles W. Ray Jr, Judge.

Appearances: Megan M. Rowe, Denali Law Group, P.C., under contract with the Office of Public Advocacy, Anchorage, for the Appellant. John K. Bodick, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

Wilson William Fox appeals the superior court's dismissal of his application for post-conviction relief. Fox argues that the superior court erred when it

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

upheld the Alaska Parole Board's decision to deny him 18 days of credit against his sentence.[1]  For the reasons explained here, we affirm the superior court's ruling.

*Background facts and prior proceedings*

In 1983, Wilson William Fox was convicted of second-degree murder and sentenced to 60 years with 30 years suspended (30 years to serve) and 5 years' probation. In 2007, Fox was released on mandatory parole.  Approximately a year later, Fox tested positive for marijuana on two separate occasions.  The two positive drug tests occurred less than a month apart.  The second time that Fox tested positive for marijuana, his parole officer gave Fox the choice of either (1) residing at the Tundra Center, a community residential center (CRC), or (2) having the parole officer file a parole violation report — in which case Fox would be arrested and he would face possible revocation of his parole and additional incarceration.

Fox chose to live temporarily at the Tundra Center, although he actively sought approval from his probation officer for alternative housing.  After about 18 days, Fox was allowed to leave the Tundra Center to stay at his grandmother's house.

Approximately two years later, in 2010, Fox wrote to the parole board requesting that he receive credit against his sentence for the 18 days he spent at the Tundra Center.  The parole board did not respond to this request.

In 2013, Fox's parole was revoked based on his consumption of alcohol. At the final parole hearing, the parole board granted Fox a discretionary parole release subject to his successful completion of a residential substance abuse treatment program while he was incarcerated.  The parole board ultimately granted Fox credit against his

---

[1]  Fox also raises another claim on appeal related to the parole board's authority to set a precondition for release on discretionary parole.  Shortly after this appeal was initially filed, Fox was released from incarceration, rendering this claim moot.

sentence for time he spent at various facilities, (including a different stint at the Tundra Center), but the board denied Fox credit for the 18 days at issue here.

Fox filed an application for post-conviction relief in the superior court, arguing, *inter alia*, that he was entitled to these extra 18 days of credit under *State v. Shetters*.[2] The State argued that Fox was not entitled to this credit under *Shetters* because Fox had voluntarily agreed to stay at the Tundra Center, and he had not been placed there by order of the parole board.[3] An evidentiary hearing was held, and both parties moved for summary disposition on Fox's claim for credit.

The superior court subsequently issued an order affirming the parole board's denial of Fox's request for credit. In reaching this decision, the court relied on our prior decision in *State v. Fortuny*.[4] In *Fortuny*, we held that a defendant is not entitled to *Nygren* credit for the time the defendant spent voluntarily at a residential treatment program without a court order placing the defendant in treatment.[5] We reasoned that, without a court order requiring him to be there, the defendant could not be considered to be subject to conditions approximating incarceration for purposes of

---

[2] *State v. Shetters*, 246 P.3d 332, 337-38 (Alaska App. 2010) (holding that a parolee is entitled to day-for-day plus good time credit for the time spent at a CRC if the parolee has been ordered to reside at the CRC by the parole board).

[3] The State also argued that Fox's application was untimely and that Fox was required to file a grievance followed by an application for post-conviction relief after the parole board did not respond to his initial request for credit. The superior court did not address this timeliness question in its ruling, and we need not address it in this decision.

[4] *State v. Fortuny*, 42 P.3d 1147 (Alaska App. 2002).

[5] *Fortuny*, 42 P.3d at 1149-50; *see also State v. Judson*, 45 P.3d 329, 332 (Alaska App. 2002); *Anchorage v. Bussell*, 702 P.2d 667, 668-69 (Alaska App. 1985); *Nygren v. State*, 658 P.2d 141 (Alaska App. 1983).

obtaining *Nygren* credit because the defendant was free to leave the treatment program at any time.[6]

In its ruling in the present case, the superior court acknowledged that there is a difference between a treatment program and a CRC because a defendant cannot stay at a CRC without some affirmative action by the court, the parole board, or a parole or probation officer. But the court concluded that the underlying reasoning of *Fortuny* still applied — that a defendant who voluntarily chose to reside at the CRC was not subject to conditions approximating incarceration for purposes of obtaining *Nygren* or *Shetters* credit. The court therefore ruled that Fox was not entitled to *Shetters* credit for the 18 days he voluntarily spent at the CRC because "Mr. Fox did have options, even if he perceived them to be less desirable" than staying at the CRC for a short period of time.

This appeal followed.

### Why we affirm the superior court's ruling

On appeal, Fox argues that the superior court erred when it concluded that he was at the CRC voluntarily. Fox points out that a defendant cannot just check himself into a CRC in the same manner he can check himself into a residential treatment program. Instead, a defendant must be affirmatively placed at a CRC by the Department of Corrections, the parole board, the court, or through arrangements made by his parole (or probation) officer. Fox therefore contends that, by definition, there are no "voluntary" placements at a CRC, even if the defendant willingly agrees to temporarily reside there.

For its part, the State contends that because there was no parole condition or parole board order requiring Fox to reside at the Tundra Center, Fox must necessarily

---

[6] *Fortuny*, 42 P.3d at 1149-50 (citing *Bussell*, 702 P.2d at 668-69).

have been there voluntarily. The State also suggests that parole officers lack the authority to unilaterally place a person at a CRC, and therefore all such placements are voluntary.

Even assuming that parole officers do not have the authority to unilaterally order a parolee to reside at a CRC (a question we need not decide here), we reject the State's contention that this automatically means the parolee was at the CRC "voluntarily." What matters is how the parolee's consent was obtained — in particular, whether it was obtained through a coercive claim of authority, even if that authority did not actually exist.[7] Indeed, we can perceive many reasons for trial judges to be skeptical of the "voluntariness" of such placements, given the potentially coercive nature of a parole officer's "request."

At the same time, we disagree with Fox's contention that all such placements are inherently involuntary and the equivalent of incarceration. Here, the court held an evidentiary hearing and determined that Fox's placement at the CRC was voluntary. This finding is supported by the record, which shows that Fox was made aware that he was not being ordered to the CRC, and that Fox understood that he could refuse to be placed there. There is also nothing in the record to suggest that Fox was prohibited from leaving the CRC if he wished, or that he would have faced any penalties for doing so — other than being subject to the original petition to revoke probation that he was able to avoid by choosing to temporarily reside at the CRC. The record also

---

[7] *Cf. Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) ("Consent [is not] freely and voluntarily given ... [when it is] no more than acquiescence to a claim of lawful authority."); 4 Wayne R. LaFave, *Search and Seizure*, § 8.2(a), at 71 (5th ed. 2012) ("One factor very likely to produce a finding of no consent ... is an express or implied false claim by the police that they can immediately proceed to make the search in any event.").

shows that Fox's stay was short, and that it was marked by Fox's ultimately successful efforts to get approval for alternative housing.

Given these circumstances, we conclude that the superior court did not err when it upheld the parole board's decision to deny Fox credit against his sentence for the 18 days that Fox spent at the Tundra Center.

*Conclusion*

The judgment of the superior court is AFFIRMED.